UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **RLE INTERNATIONAL, INC.**, a Michigan corporation<br><br>    Plaintiff/Counter-Defendant,<br><br>v.<br><br>**MULLEN TECHNOLOGIES, INC.**, a California corporation,<br><br>    Defendant/Counter-Plaintiff. | Case No. 2:25-cv-10582-DPH-EAS<br><br>Hon. Judge Denise Page Hood<br>Mag. Judge Elizabeth A. Stafford<br><br>**JURY TRIAL DEMANDED** |

## MULLEN TECHNOLOGIES, INC.'S ANSWER TO COMPLAINT, AFFIRMATIVE DEFENSES, COUNTERCLAIMS AND JURY DEMAND

NOW COMES Defendant Mullen Technologies, Inc. ("Mullen"), by and through undersigned counsel, and for its Answer to Plaintiff's Complaint, hereby responds as follows:

**PARTIES**

1. Mullen admits that RLE International, Inc. ("RLE") is a Michigan corporation. Mullen is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 1, and therefore denies the same.

2. Mullen denies it is a California corporation with its principal place of business in California. Mullen is a Delaware corporation.

1

## JURISDICTION AND VENUE

3.      Mullen admits that this Court has diversity jurisdiction over this matter pursuant to 28 U.S.C. § 1332.

4.      Mullen admits that venue is proper in this District.

## BREACH OF CONTRACT

5.      Mullen admits that it issued Purchase Order 2-220519-07 to RLE on May 19, 2022, for the "design, build, integration, and validation of complete 2 off Track Vehicles" in the amount of $3,615,686.00. See, Dkt. 1-1, PageID.4. Mullen denies that RLE fully performed its obligations under the Purchase Order as alleged.

6.      Mullen denies the allegations in paragraph 6. RLE failed to deliver the Track Vehicles in working order and in a timely fashion as required under the Purchase Order.

7.      Mullen admits that it made certain payments on the Purchase Order. Mullen denies that it breached its payment obligations under the Purchase Order. Any failure to make payment was justified by RLE's material breach of its performance obligations under the Purchase Order, including but not limited to RLE's failure to deliver working Track Vehicles in a timely manner.

8.      Mullen denies the allegations in paragraph 8. RLE's claimed damages, if any, are barred by RLE's own material breach of the Purchase Order.

## AFFIRMATIVE DEFENSES

By way of further Answer and as affirmative defenses, Mullen Technologies, Inc. ("Mullen") denies that it is liable to Plaintiff on any of the claims alleged and denies that Plaintiff is entitled to damages, treble or punitive damages, equitable relief, attorneys' fees, costs, pre-judgment interest, or to any relief whatsoever, and asserts the following.

### FIRST AFFIRMATIVE DEFENSE

RLE materially breached the Purchase Order by failing to deliver the Track Vehicles in working order and in a timely fashion, which excuses any obligation by Mullen to make further payments.

### SECOND AFFIRMATIVE DEFENSE

RLE failed to provide the consideration for which Mullen contracted, namely the timely delivery of two working Track Vehicles suitable for the "Strikingly Different" tour.

### THIRD AFFIRMATIVE DEFENSE

Any amounts allegedly owed to RLE must be set-off against damages sustained by Mullen as a result of RLE's breach of contract.

### FOURTH AFFIRMATIVE DEFENSE

RLE's Complaint fails to state a claim upon which relief can be granted.

## FIFTH AFFIRMATIVE DEFENSE

RLE's claims are barred, in whole or in part, by the doctrines of waiver and estoppel. RLE knowingly accepted Mullen's performance under the Purchase Order despite alleged deficiencies and failed to object or take corrective action in a timely manner. RLE's conduct induced Mullen to reasonably rely on the belief that its performance was acceptable, and RLE should be estopped from asserting claims inconsistent with that conduct.

## SIXTH AFFIRMATIVE DEFENSE

RLE failed to take reasonable steps to mitigate its alleged damages. Any recovery sought by RLE must be reduced or barred to the extent that RLE could have avoided or minimized its losses through reasonable efforts.

## SEVENTH AFFIRMATIVE DEFENSE

RLE's claims are barred by the equitable doctrine of unclean hands. RLE engaged in conduct that was unfair, deceptive, or otherwise inequitable in connection with the formation and performance of the Purchase Order, including but not limited to misrepresentations regarding its capabilities and failure to deliver functioning vehicles as promised.

## PRAYER FOR RELIEF

**WHEREFORE**, Mullen respectfully requests that this Court:

A.   Dismiss RLE's Complaint with prejudice;

    B.    Enter judgment in favor of Mullen on all claims asserted by RLE;

    C.    Award Mullen its costs and attorney's fees; and

    D.    Grant such other and further relief as this Court deems just and proper.

## COUNTERCLAIMS

NOW COMES Counter-Plaintiff Mullen Technologies, Inc. ("Mullen"), by and through undersigned counsel, and for its counterclaims against Counter-Defendant RLE International, Inc. ("RLE"), hereby states as follows:

### PARTIES

1. Counter-Plaintiff Mullen Technologies, Inc. is a Delaware corporation with its principal place of business in California.

2. Counter-Defendant RLE International, Inc. is a Michigan corporation with its principal place of business in Michigan.

### JURISDICTION AND VENUE

3. This Court has jurisdiction over these counterclaims pursuant to 28 U.S.C. § 1367 as it forms part of the same case or controversy as RLE's Complaint.

4. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2).

## FACTUAL ALLEGATIONS

5.     On May 19, 2022, Mullen issued Purchase Order 2-220519-07 to RLE for the design, build, integration, and validation of two (2) complete Track Vehicles (the "RS Vehicles") in the amount of $3,615,686.00. See, Dkt. 1-1, PageID.3-5.

6.     In 2022, Mullen launched a first tour to showcase Mullen's innovative approach to EV technology and its commitment to redefining road travel, specifically featuring the Mullen FIVE EV Crossover. The tour visited 7 different states with 9 different events.

7.     Building on the success of the first tour, Mullen undertook planning of its second tour, titled "Strikingly Different," which was a critical marketing initiative for Mullen's business operations, and it was set to feature the RS Vehicles.

8.     The RS Vehicles were to be delivered in fully operational condition as specified in the Purchase Order. Time was of the essence due to the scheduled promotional events.

9.     RLE holds itself out to provide "comprehensive engineering services, we assist our clients in the development of their vehicle portfolios, including battery electric vehicles (BEVs), from the initial conceptualization stage through to the production launch. Our expertise encompasses the full engineering lifecycle, encompassing vision refinement, engineering, CAD and CAE, validation, and

testing, as well as the construction of functional and drivable prototypes." Ex. A, https://rle.international/rle-usa/.

10.  In 2022, RLE claimed to be a "renowned development service provider" that was intensively involved with the new technologies of electromobility and that supported its customers with proven expertise and extensive practical experience. Ex. B,

https://web.archive.org/web/20220721145328/https://www.rle.international/ee-solutions/?lang=en.



11.  RLE claimed to provide technical support for integrating electric, hybrid and fuel cell technologies, including: System Integration and Controls, Power Electronics and Distribution, HV Battery Integration, Motor Integration, HiL Rigs, Test Rigs, Robust / Reliable Processes, ISO Certifications. Ex. B.

12. RLE accepted the Purchase Order and represented that it had the technical capability, experience, and resources to deliver the RS Vehicles in accordance with the required specifications and schedule as set forth in the Purchase Order and modified by the Parties thereafter.

13. RLE knowingly accepted Mullen's performance under the Purchase Order, accepted revisions to the project timeline, and RLE's conduct induced Mullen to reasonably rely on the belief that its performance was acceptable and that RLE could continue to meet the project timeline.

14. Despite RLE's representations, RLE failed to deliver the RS Vehicles in working order and within the agreed-upon timeframes as required by the Purchase Order. The vehicles were not operational at the time of the scheduled tour, causing Mullen to cancel or modify key promotional events.

15. RLE's failure to deliver is attributable to, in significant part, integration and design issues experienced by RLE and RLE's suppliers. For example, RLE experienced delays in connection with its driveshaft supplier.

16. RLE reported drivetrain issues, including the inability of the rear drive unit to engage, which was attributable to RLE's improper installation and mixing of electric drive unit (EDU) components. RLE had mismatched the EDU components, including incorrect pairings of inverters, motors, and transmissions, which caused system instability and performance failures.

17. RLE's failure to deliver the vehicles as promised deprived Mullen of the benefit of its bargain, caused substantial reputational harm, and resulted in lost marketing opportunities and business relationships.

18. Mullen was unable to proceed with the "Strikingly Different" tour as planned, causing substantial damage to Mullen's business, reputation, and marketing objectives.

## COUNT I - BREACH OF CONTRACT

19. Mullen incorporates by reference all preceding paragraphs as if fully set forth herein.

20. The Purchase Order constituted a valid and enforceable contract between Mullen and RLE.

21. Mullen performed all of its obligations or was excused from performance under the Purchase Order.

22. RLE materially breached the Purchase Order by failing to deliver the RS Vehicles in working order and in a timely fashion.

23. As a direct and proximate result of RLE's breach, Mullen has suffered damages including but not limited to:

    a. Lost business opportunities related to the "Strikingly Different" tour;

    b. Damage to business reputation and goodwill;

      c.      Additional costs incurred to remedy RLE's defective performance;

      d.      Lost marketing and promotional value; and

      e.      Other consequential damages.

24. Mullen's damages exceed $2,500,000.

## COUNT II - UNJUST ENRICHMENT

25. Mullen incorporates by reference all preceding paragraphs as if fully set forth herein.

26. Mullen conferred benefits upon RLE in the form of payments made under the Purchase Order.

27. RLE accepted and retained these benefits while failing to provide the contracted performance.  RLE continues to possess the two vehicles.

28. Under the circumstances, it would be unjust for RLE to retain possession of the vehicles and other benefits without providing the contracted performance.

29. RLE should be required to disgorge the benefits it received from Mullen.

## COUNT III - CONVERSION

30. Mullen incorporates by reference all preceding paragraphs as if fully set forth herein.

31. Mullen is the rightful owner with right of possession of the RS Vehicles.

32. RLE breached its obligations and failed to deliver the RS Vehicles in working order and on time.

33. As a direct and proximate result of RLE's breach, Mullen has suffered damages including but not limited to:

    a. Lost business opportunities related to the "Strikingly Different" tour;

    b. Damage to business reputation and goodwill;

    c. Additional costs incurred to remedy RLE's defective performance;

    d. Lost marketing and promotional value; and

    e. Other consequential damages.

34. Mullen is entitled to possession of the RS Vehicles.

### COUNT IV – NEGLIGENT MISREPRESENTATION

35. Mullen incorporates by reference all preceding paragraphs as if fully set forth herein.

36. RLE, through its agents and representatives, made material representations to Mullen regarding its capabilities, experience, and readiness to design, build, integrate, and validate and deliver two fully functional RS Vehicles required by the Purchase Order.

37. These representations were made in the course of RLE's business and were intended to induce Mullen to enter into the Purchase Order.

38. RLE failed to exercise reasonable care or competence in obtaining or communicating the information upon which Mullen relied.

39. Mullen reasonably and justifiably relied on RLE's representations in issuing the Purchase Order and planning its "Strikingly Different" promotional tour.

40. As a direct and proximate result of RLE's negligent misrepresentations, Mullen has suffered damages in an amount to be proven at trial.

**COUNT V – BREACH OF IMPLIED WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE**

41. Mullen incorporates by reference all preceding paragraphs as if fully set forth herein.

42. RLE knew or had reason to know that Mullen required the RS Vehicles for a specific purpose—namely, use in the "Strikingly Different" promotional tour—and that Mullen was relying on RLE's skill and judgment to design, build, integrate, and validate suitable vehicles for that purpose.

43. Mullen did in fact rely on RLE's skill and judgment in designing, building, integrating, and validating the RS Vehicles.

44. RLE breached the implied warranty of fitness for a particular purpose by delivering vehicles that were not suitable for the intended use and failed to function as required.

45. As a direct and proximate result of RLE's breach, Mullen has suffered damages in an amount to be proven at trial.

## COUNT VI – FRAUDULENT INDUCEMENT

46. Mullen incorporates by reference all preceding paragraphs as if fully set forth herein.

47. Prior to entering into the Purchase Order, RLE knowingly made false representations to Mullen regarding its expertise and ability to timely deliver fully functional RS Vehicles that met Mullen's specifications and needs.

48. RLE made these representations with the intent to induce Mullen to enter into the Purchase Order and to continue to schedule promotional events as part of the "Strikingly Different" tour with the expectation that the RS Vehicles would be delivered and be functional.

49. Mullen reasonably relied on RLE's false representations in entering into the Purchase Order and committing substantial resources to the "Strikingly Different" tour.

50. Had Mullen known the true facts, it would not have entered into the Purchase Order or would have done so on materially different terms.

51. As a direct and proximate result of RLE's fraudulent inducement, Mullen has suffered damages in an amount to be proven at trial.

## PRAYER FOR RELIEF

**WHEREFORE**, Mullen respectfully requests that this Court:

1. Enter judgment in favor of Mullen and against RLE on all counts of these counterclaims;

2. Award Mullen damages in an amount to be proven at trial, but not less than $2,500,000;

3. Award Mullen restitution of payments made to RLE;

4. Award Mullen its costs and reasonable attorney's fees;

5. Award prejudgment interest;

6. Award Mullen possession of the RS Vehicles; and,

7. Grant such other and further relief as this Court deems just and proper.

## JURY DEMAND

Mullen hereby demands a trial by jury on all issues so triable.

Date: August 13, 2025         Respectfully Submitted,

**HOWARD & HOWARD ATTORNEYS PLLC**

By: */s/ Kristopher K. Hulliberger*
    Kristopher K. Hulliberger (P66903)
    450 West Fourth Street
    Royal Oak, MI 48067
    Ph: (248) 723-0453
    kkh@h2law.com

*Attorneys for Defendant/Counter-Plaintiff*

## CERTIFICATE OF SERVICE

I certify that on August 13, 2025, I caused the foregoing document to be filed with the Clerk of the Court via the CM/ECF system, which will cause notice of same to be sent to all counsel of record.

>By: <u>/s/ Kristopher K. Hulliberger</u>
>HOWARD & HOWARD ATTORNEYS PLLC
>Kristopher K. Hulliberger (P66903)
>450 West Fourth Street
>Royal Oak, MI 48067
>(248) 723-0453
>kkh@h2law.com
>
>*Attorneys for Defendant/Counter-Plaintiff*